IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01348-MSK-MEH

HERMAN REVELLO,

    Plaintiff,

v.

MEDICAL SUPERVISOR SCHISSLER,
COURT SERVICES SUPERVISOR ARGO, and
NURSE P.J.,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendants Shissler and "P.J."'s

(hereinafter "Ms. Bustamante") Motion for Summary Judgment **(# 66)**, Mr. Revello's response

**(#80)**, Ms. Shissler and Bustamante's reply **(# 77**, as supplemented **# 84)**, additional briefing[1] by

---

[1]Briefing in this case has not gone smoothly. Mr. Revello did not promptly respond to Ms. Shissler and Ms. Bustamante's motion within the time set forth by D.C. Colo. L. Civ. R. 7.1(C), and thus, the Defendants filed a brief reply **(# 77)** noting that fact. Mr. Revello then tendered a substantive response **(# 80)**, and the Defendants sought and obtained **(# 81, 82)** leave to file a "surreply" responding to Mr. Revello's new filing. On April 1, 2010, two weeks after the Defendants' surreply, Mr. Revello filed a motion **(# 86)** for leave to respond to these Defendants' motion, stating that he had never received a copy of it. Over the following weeks, while he request for leave to conduct additional briefing was still pending, Mr. Revello proceeded to file three more substantive responses to the summary motion **(# 87, 88, 90)**. The Defendants responded by moving to strike **(# 91)** Mr. Revello's "surreply," although it is not entirely clear to this Court which of the three documents is requested to be stricken. On June 4, 2010, the Court finally granted **(# 93)** Mr. Revello's request to conduct additional briefing, granting him until July 1, 2010 to do so. Notwithstanding the Court's express granting of additional time to file, on June 25, 2010, Mr. Revello filed a Motion for Leave to Respond **(# 97)** to the Defendants' briefing and simultaneously filed a response **(# 98)** to <u>both</u> the summary judgment motion of Ms. Shissler and Ms. Bustamante, <u>and</u> to the summary judgment motion of

1

Mr. Revello **(# 86, 87, 88, 90, 98)**; Defendant Argo's Motion for Summary Judgment **(# 69)**, Mr. Revello's response **(# 74)**, and Ms. Argo's reply[2] **(# 78)**.

## FACTS

According to the *pro se* Amended Complaint **(# 27)**, and elaborated upon as necessary in the analysis, Mr. Revello is a prisoner in the custody of the Adams County Detention Facility ("ACDF"). On August 25, 2008, he complained to medical staff at ACDF about a pre-existing injury to his left knee. He contends that Ms. Shissler is responsible for denying him treatment that other medical providers recommended for his knee. In addition, construing the Complaint most liberally, it appears that he contends that he is being denied the opportunity to serve as a "trusty"[3] and earn additional good-time credit against his sentence because he is "disabled". Mr. Revello also contends that Ms. Shissler has the power to grant him an exemption from physical requirements for participation in the "trusty" program, but that Ms. Shissler has refused to do so.

Separately, Mr. Revello complains that he spoke with Ms. Argo in an attempt to be "reclassified" in order to participate in the Inmate Worker Program. Ms. Argo stated that "medical had a hold on [him]" and that he had to be reclassified as "medium" in order to apply. Apparently, Mr. Revello's medical condition bears on this issue, as he understood Ms. Argo's

---

Ms. Argo. As a result, Ms. Argo moved **(# 104)** for leave to file her own sur-reply **(# 105)** in support of her own motion.

[2]Without having sought or obtained leave to do so, Mr. Revello also filed a surreply **(#83)** to Ms. Argo's reply.

[3]C.R.S. § 17-26-115 provides that "Persons confined in the county jail . . . who are engaged in work within or outside the walls of the jail, and who are designated by the sheriff as trusty prisoners . . . may be granted such good time, in addition to that allowed in section 17-26-109, as the sheriff may order, not to exceed ten days in any thirty-day period."

statements to mean that he "would never leave Max[imum security]"and since he "walk[s] with a cane, that [he] could not be a trusty." Mr. Revello asked Ms. Argo whether ACDF would "fix his knee" and she responded that they were "not going to pay for your knee." Ms. Argo also allegedly laughed at Mr. Revello's request to see a doctor, stating that "There are 1,400 inmates at ACDF and it may take 1,400 days" for Mr. Revello to see a doctor. Mr. Revello contends, among other things, that this violates his Equal Protection rights as compared to other inmates and that Ms. Argo "increased his classification, all in retaliation of past administrative grievances."

Mr. Revello also complains about treatment he received from Ms. Bustamante, one of ACDF's nurses. He asked her if ACDF would "fix my knee" and she responded "No, it costs too much and the jail will not pay for it." He also asked Ms. Bustamante "if medical could lift the hold on me so I could apply for trusty" to which Ms. Bustamante replied "no [be]cause you have a cane to walk with." He also contends that Ms. Bustamante claimed to schedule a doctor's appointment for him, but that he was never seen by the doctor as scheduled.

Construed liberally, Mr. Revello's Amended Complaint suggests claims for: (i) violation of his 8th Amendment rights to be free from cruel and unusual punishment, arising from the Defendants' deliberate indifference to his medical needs; (ii) a Due Process violation, in that he had a protectible liberty interest in participating in the "trusty" program and that the Defendants deprived him of that opportunity without affording him Due Process; (iii) a Due Process claim premised on Ms. Argo's refusal to "reclassify" him as a "medium [security]" inmate; (iv) an Equal Protection claim he asserts, but the contours of which are not entirely clear, having to do with the ability of other inmates to participate in the "trusty" program while he cannot; and (v) a

3

claim that Ms. Argo retaliated against him for exercising his First Amendment rights, in that Ms. Argo refused to arrange for medical care and refused to reclassify him.

## ANALYSIS

### A. Standard of review

In considering the Plaintiff's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

4

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Eighth Amendment claims**

Given the amount of substantive overlap in the claims against each Defendant, the Court

5

finds it more practical to address Mr. Revello's claims on a topical basis, rather than individually as to each Defendant.

To establish a claim for deliberate indifference to medical needs as an 8th Amendment violation, an inmate must show: (i) that he suffered from a serious medical need – that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it. *See e.g. Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Allegations of negligent or even incompetent treatment are not sufficient. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Here, there is ample evidence that Mr. Revello received ongoing medical care for his knee from a variety medical providers. The Court will not extensively recite the numerous instances in which Mr. Revello received medical treatment for his knee condition; it is sufficient to note that, from August 2008 through October 2009, Mr. Revello was repeatedly seen by prison medical staff, outside physicians, and orthopedic specialists concerning his knee. The crux of Mr. Revello's complaint seems to be that he believes that the Defendants somehow interfered with a medical recommendation that he have his knee surgically repaired. However, upon review of the record, the Court agrees with the Defendants that no physician ever specifically directed that Mr. Revello undergo corrective surgery. Mr. Revello points to extracts of records from certain medical visits in which physicians noted surgery as one of several

options to be considered,[4] but points to no record in which any physician specifically stated that surgery was required or even the most appropriate treatment. Simply put, there is no evidence that any of the Defendants deliberately withheld medical treatment that had been prescribed for Mr. Revello or otherwise prevented him from receiving treatment that his doctors recommended. The fact that some of the Defendants may have opined that the ACDF would be unlikely to pay for surgical treatment were it to have been recommended is irrelevant, as no doctor ever directed that surgical treatment be provided.

Accordingly, the Court finds that each Defendant is entitled to summary judgment on the 8th Amendment claims.

**C. Due Process claims**

The Court understands Mr. Revello to assert two separate Due Process claims. He alleges that Defendant Shissler deprived him of Due Process by refusing to grant him a medical exemption or physical certification that would allow him to participate in the "trusty" program, and that Defendant Argo deprived him of Due Process by refusing to reclassify him from maximum security to medium security, which affected both the nature of his housing assignment and his ability to participate in the "trusty" program.

To establish a claim for denial of Due Process, Mr. Revello must first establish that he

---

[4] See *e.g.* October 24, 2008 notes of Dr. Rowland ("one could consider an arthroscopic evaluation of the knee or even consider total knee arthroplasty. Hopefully, we can avoid offering surgery . . ." and suggesting a follow-up to determine "whether this gentleman is becoming a candidate for knee arthroplasty"); June 8, 2009 examination by Dr. Gonzales (which Mr. Revello states was "to discuss orthopedic surgery which Plaintiff felt he did not need at that time as he was following Dr. instructions and doing well"); October 19, 2009 consultation with Dr. Berroa (which Mr. Revello contends resulted in the doctor "discuss[ing] with Plaintiff that he did need a knee replacements but she did not feel I was a good candidate due to [my] previous history of I.V. drug use")

had a constitutionally-protected liberty or property interest that he was deprived. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Typically, in the prison context, a liberty interest will arise where the state confers upon inmates, by operation of law or regulation, a right or expectation in a particular prison benefit such as good-time credits that operated to shorten an inmate's sentence. *Id., citing Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, under Colorado law, good-time credits do not shorten an inmate's sentence; they only hasten the date upon which an inmate is considered eligible for discretionary parole. As a result, good-time credits in Colorado do not give rise to a liberty interest protected under the Due Process clause. *Anderson v. Cunningham*, 319 Fed.Appx. 706, 710 (10th Cir. 2009). Similarly, it is well-settled that an inmate generally does not have a liberty interest in a particular security classification within a prison.[5] *Dodge v. Shoemaker*, 695 F.Supp. 2d 1127, 1138 (D. Colo. 2010).

Here, Mr. Revello complaints that, by not being allowed to become a "trusty," he earns fewer good-time credits than he otherwise could. Because a lack of access to good-time credits cannot support a liberty interest in Colorado, a Due Process claim premised on an inability to participate in the "trusty" program fails. Similarly, his contention that Defendant Argo deprived him of Due Process by refusing to reclassify him from maximum security to medium security does not establish a Due Process claim.

**D. Equal Protection**

The contours of any Equal Protection claim that Mr. Revello asserts are murky. In the Amended Complaint, Mr. Revello states that he "was treated differently from other inmates,"

---

[5]Mr. Revello does not allege that conditions of confinement in maximum security are "atypical and significant hardships in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 472, 484 (1995).

goes on to recite the Equal Protection analysis, states that he "has demonstrated facts indicating an Eighth Amendment violation by Defendant Susan Argo, it has clearly been established that when inmates are denied access to medical care, or access to medical care is intentionally delayed," and the sentence then ends. The following sentence alleges that Mr. Revello was retaliated against by Ms. Argo for his filing of grievances. Thus, it is not clear to the Court precisely what similarly-situated inmates Mr. Revello believes were treated better than he was, than, nor in what way he was adversely treated.

To establish an Equal Protection claim, Mr. Revello must demonstrate that he was treated adversely from a similarly-situated individual. *Engquist v. Oregon Dept. of Agr.*, 128 S.Ct. 2146, 2153 (2008). Were he to do so, the Court would go on to examine whether the reason given by the Defendants for that differential treatment met the applicable legal standard.

As best the Court can determine, Mr. Revello is alleging that fellow inmates with similar disciplinary and work records have been permitted to participate in the "trusty" program while he has not.[6] Mr. Revello has not specifically pointed to any such inmates, except in the most general and abstract terms. Moreover, the record reflects that, examining only the conduct of the Defendants named here, no Defendant has allegedly treated a similarly-situated inmate more favorably than him. Ms. Shissler states that prison policies – policies that she does not control[7] –

---

[6]The only other articulation of an Equal Protection claim that the Court could discern from the Amended Complaint is that Mr. Revello might be asserting that similarly-situated inmates with medical problems received more favorable medical treatment than he did. If this is his Equal Protection claim, he has completely failed to specifically identify any inmate who was similarly-situated to him and yet received more favorable treatment.

[7]The Court expresses no opinion as to whether prison policies that deny "trusty" status to inmates with physical disabilities comports with state, federal, or constitutional law. The record in this case is unrebutted that none of the Defendants named here promulgated that policy or

9

impose physical requirements on an inmate's ability to participate in a "trusty" program. She states that, because Mr. Revello walks with a cane, she determined that he did not meet the physical requirements of the program. Mr. Revello does not point to any other inmate to whom Ms. Shissler has granted a waiver of the physical requirements or otherwise shown that Ms. Shissler has allowed another cane-using inmate could nevertheless participate in the "trusty" program. Similarly, Mr. Revello has not shown that Ms. Argo has changed the security classification of inmates similarly-situated to him. Accordingly, to the extent Mr. Revello purports to assert an Equal Protection claim, the Defendants are entitled to summary judgment on that claim.

### E. First Amendment retaliation

Finally, Mr. Revello asserts a claim against Ms. Argo only, alleging that she "increased" his security classification in retaliation for his having filed grievances against her. Mr. Revello's deposition testimony describes the claim somewhat differently: he testified that Ms. Argo increased his security classification in retaliation for a lawsuit that Mr. Revello had filed against Melanie Gregory, Ms. Argo's supervisor, in 1994 or 1995. Mr. Revello contends that Ms. Argo increased his security classification because he was classified as a minimum security prisoner "three, four years ago," and is now currently classified as a maximum security inmate. He contends that the difference in classification is based on "some false accusations" by Ms. Argo in his security classification report, although he acknowledges that "I won't be able to prove [the accusations are false] but I will tell you they're not the same ones that I seen the first time." Ms.

---

have the ability to modify or revoke it. As a result, the question of whether those policies are lawful is not before this Court in this case.

Argo has submitted (under seal) copies of security classification forms assigning points to Mr. Revello in various categories. In each classification assessment, Mr. Revello receives more than 14 points, rendering him a "maximum security" inmate.

To establish a claim for First Amendment retaliation, a plaintiff must show: (i) that he engaged in constitutionally-protected activity, (ii) that the defendant took an action against him that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that the adverse action was substantially motivated as a response to the constitutionally-protected activity. *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010).

Assuming – without necessarily finding – that Mr. Revello's 1994 lawsuit against Ms. Gregory was "constitutionally protected activity" sufficient to establish the first element – Mr. Revello has failed to show that his classification as a maximum security inmate is one which would "chill a person of ordinary firmness" from engaging in the protected activity of filing lawsuits,[8] nor that there is evidence that would suggest that Ms. Argo's classification of his was motivated by the decade-old lawsuit against her supervisor.[9] As to the latter point, the Court finds that there is a vast temporal gulf between the protected conduct and the alleged adverse action, that Mr. Revello has alleged only the most tenuous of reasons why Ms. Argo would harbor a desire to retaliate against him for conduct he previously directed at Ms. Gregory – *i.e.*

---

[8]Although it is notable more for its irony than for its legal significance, the Court observes that Mr. Revello's classification did not discourage him from filing <u>this</u> lawsuit.

[9]Mr. Revello appears to also contend that Ms. Argo delayed his reclassification on at least one occasion, classifying him over an 8-month period instead of the 4-month period required by ACDF policy. Even assuming this is true, the record reflects that Mr. Revello consistently remained a "maximum security" inmate upon each reclassification, and thus, the failure to evaluate his security level more often would not have yielded any different results.

the fact that Ms. Gregory is Ms. Argo's supervisor and Mr. Revello's testimony that "they're quite close" – and that the security classification assessment process is almost entirely objective. Each of the eight categories scored contains objective criteria to be examined – the severity of the inmate's current convictions (based on a "severity offense scale"), a consideration of the inmate's number of disciplinary convictions – and point scores are preassigned to the various levels found in each category (*e.g.* high severity convictions score 7 points, one disciplinary conviction since the inmate's last security classification scores one point, etc.). Security classifications are dictated by the number of points an inmate receives, and in each of the three classifications tendered by Ms. Argo, Mr. Revello received enough points to place him in the "maximum security" category each time. Thus, there is simply no place for Ms. Argo to have exercised discretion in ranking Mr. Revello such that she could retaliate against him by modifying his security classification.[10] Because Mr. Revello cannot demonstrate that Ms. Argo's classification of him was motivated by his prior filing of a lawsuit, Mr. Revello's First Amendment retaliation claim fails.

---

[10] The Court observes that Mr. Revello consistently received a "high" ranking for offense severity, a "highest" rating for offense history, and the highest point total available for "prior jail time." These three categories alone supply enough points to place him in maximum security.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motions for Summary Judgment **(# 66, 69)** are **GRANTED** in their entirety. Judgment shall enter in favor of the Defendants contemporaneously with this Order. The motions found at Docket # **91, 97**, and **104** are denied, as moot.

Dated this 13th day of August, 2010

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge